The Irving Bank *v.* Wetherald.

———•••———

THE IRVING BANK *vs.* WETHERALD & YOUNG.

A note, made by W. and payable at the Irving Bank, was discounted by the Seventh Ward Bank. Subsequently, W. formed a partnership with D., under the firm name of W. & Co.; whereupon the firm directed the Irving Bank to charge the notes of W., including the one in question, to the account of W. & Co. Prior to the maturity of the note, W. died, and D. directed the Irving Bank not to charge the individual notes of W. to the account of W. & Co. When the note matured, the Seventh Ward Bank, as the owner thereof, presented it to the paying teller of the Irving Bank, who certified it as paid, and charged the amount to W. & Co. who had not enough funds in the bank to pay it, and W. had no funds there. The Seventh Ward Bank stamped the note "paid." On discovering the mistake of its teller, in certifying the note, and before three o'clock of the same day, the Irving Bank notified the Seventh Ward Bank of the mistake, and requested that the certificate be canceled, which was refused. The Irving Bank then paid to the Seventh Ward Bank the full amount of the note and received the same back, stamped "paid." On the same day, and before three o'clock P. M., the note was again presented at the Irving Bank and payment demanded, and was protested for non-payment, and notice thereof given to the indorsers. *Held* that the note was not to be deemed paid, and that the Irving Bank could maintain an action thereon, against the indorsers.

THIS was an action against the defendants as indorsers of a promissory note. The cause was tried at the New York circuit before Justice JAMES, without a jury. The court found the following facts: That the plaintiffs are a

banking association duly organized under the laws of the state of New York. On the 7th day of December, 1858, one Morris Wilson made his note for $304.30, at eight months, payable at the Irving Bank to his own order; that he indorsed the same, and it was also indorsed by Wetherald & Young, the defendants. That said note, before maturity, was duly discounted by the Seventh Ward Bank for the defendants. That after making said note, the said Morris Wilson entered into copartnership with one Davidson under the firm name of Morris Wilson & Co., after which said Wilson closed his account with said Irving Bank, and opened there an account in the firm's name, and the said firm thereupon directed the said Irving Bank to charge the notes of Morris Wilson, including the note in suit, as they matured, to the account of Morris Wilson & Co. That prior to the maturity of said note Morris Wilson died; that after his death, and before the maturity of the note, Davidson, the partner of Wilson, directed the Irving Bank not to charge the individual notes of Morris Wilson to the account of Morris Wilson & Co. That on the day the aforesaid note matured the Seventh Ward Bank, as the owner thereof, presented it to the paying teller of the Irving Bank, who certified it in the usual manner as paid, and charged the same in the books of the Irving Bank thus—"Aug. 10, 1859, Morris Wilson & Co. $304.30;" that at this time Morris Wilson had no funds in the bank, and Morris Wilson & Co. had but $246.43 to their credit. That immediately upon said note being returned to the Seventh Ward Bank, certified, that bank caused the same to be stamped across the face, "Seventh Ward—Paid at the bank." Also, written across the face the initials J. W. H., being those of the paying teller of the Irving Bank. That upon the discovery by the officers of the Irving Bank of the mistake of their paying teller in certifying said note, and before three o'clock of the same day, the said Irving Bank notified the said Seventh Ward Bank of the mistake, and requested the certificate to be canceled, which the Seventh

Ward Bank refused. That upon the refusal of the Seventh Ward Bank to cancel said certificate, the Irving Bank paid to said Seventh Ward Bank the full amount of said note and received the same into their possession stamped "paid" as aforesaid; and thereupon, on the same day of its maturity, and before three o'clock P. M., the same was again presented at the counter of the Irving Bank for payment, payment demanded, and the same duly protested for non-payment, and notice thereof given to the defendants. That the amount due upon said note for principal, protest and interest, was $313.38. The following were the conclusions of law : *First.* That the certificate of the paying teller of the Irving Bank was not an actual payment of the note. *Second.* That the notice to the Seventh Ward Bank of the mistake under which the certificate was made, exonerated the Irving Bank from all liability upon such certificate. *Third.* That the subsequent payment of the note by the Irving Bank, without compulsion of law, or legal obligation, or previous request from makers or indorsers, satisfied and discharged said note. · The court directed judgment for the defendant for a dismissal of the complaint, with costs of the action. The plaintiff excepted separately to each of the conclusions of law, and to all of said conclusions ; and appealed from the judgment.

*C. L. Monell,* for the appellant. I. The judge erred in deciding that the notice to the Seventh Ward Bank, of the mistake under which the certificate was made, exonerated the Irving Bank from all liability upon such certificate. The learned judge, in his opinion, says: "The certificate of the paying teller of the plaintiffs' bank, in legal effect, charged them with the payment of the note," but that they could exonerate themselves by giving notice of the mistake. The case of the *Canal Bank* v. *Bank of Albany,* (1 *Hill*, 287,) cited in support of this proposition, was a case of payment by the plaintiffs to the defendants of a draft, upon which the

payee and first indorser's name was *forged*. The court held the money could be recovered back; that though the defendants were innocent of any intended wrong, they had obtained money of the plaintiffs *on an instrument to which they had no title, and were therefore bound to refund*. And the case of *Wilkinson* v. *Johnson*, (3 *Barn. & Cres.* 428,) was a similar case of payment of draft with forged indorsements. · In the case before the court, the Seventh Ward Bank had a perfect title to the note; it had discounted it for the defendants, and at the time it was certified was the owner of it. The certificate of the paying teller of the Irving Bank was equivalent to payment, and only fraud on the part of the Seventh Ward Bank could discharge the obligation of the former bank. It is customary for banks to certify, instead of paying at the time, and to pass certified paper through their exchanges the next day. It is also the custom of banks holding such certified paper to stamp or mark them " paid," and to charge the amount to the certifying bank. In *Farm. and Mechanics' Bank of Kent Co.* v. *Butchers and Drovers' Bank*, (16 *N. Y. Rep.* 125,) the court say: " This obligation [i. e. certifying a check] is substantially the same as that assumed by the acceptor of an ordinary bill of exchange, and the bank is liable as acceptor." Story says, (*Story on Bills*, § 252,) when an acceptance is 'once made, if the bill has been delivered to the holder, the transaction is complete, and the acceptance is *irrevocable*. And so Chitty (*Chitty on Bills*, 308) says: " A complete acceptance, communicated to the *holder*, is not revocable." The note in this action having been made payable at the Irving Bank, was certified by them, and returned to the Seventh Ward Bank, the holder. The Irving Bank could not afterwards revoke its certificate. (*Edwards on Bills*, 434.)

II. The judge erred in deciding that the subsequent payment of the note by the Irving Bank, without compulsion of law, or legal obligation, or previous request from makers or indorsers, satisfied and discharged the note. If it has

been sustained upon principle and authority, that the plaintiff could not exonerate itself from liability upon its certificate, then this second proposition falls. The payment of the money to the Seventh Ward Bank did not affect the rights or the position of the parties in respect to this paper. The marking of the stamping hammer "paid," was not a payment. (*Scott* v. *Betts, Lalor's Hill & Denio*, 363.) The payment of the money on the day of the maturing of the notes, after the certificate, but during business hours, was merely a discharge of the previous obligation to pay, and enabled the plaintiffs to cancel their certificate, present the note for payment, and give notice of non-payment to the indorsers, (the defendants.) In treating this as a payment of the note, the learned judge assumes that it was owed by the bank either as a stranger, or as the agent of the maker. The relation which exists between a depositor and a bank is not that of a principal and agent, but of debtor and creditor. (*Chapman* v. *White*, 2 *Seld.* 412.) There was, therefore, no obligation on the part of the bank to certify the note. But having certified it, by mistake, the bank had a right to take it as purchaser, and did so purchase the note on the day of its maturity, and is, therefore, entitled to maintain this action.

III. By the transaction between the plaintiff and the Seventh Ward Bank, the plaintiff became the *purchaser* of the note before maturity, and was entitled to all the rights of the Seventh Ward Bank. The note was payable at the plaintiff's bank. At the time it was certified and returned to the Seventh Ward Bank, the latter bank did not know of any want of funds. *Non constat*, it might have been certified for the *honor* of the maker, and the Seventh Ward Bank having received the acceptance of the plaintiff, acquired additional security, of which it could not be deprived. In *Watervliet Bank* v. *White*, (1 *Denio*, 608,) the facts were these: The note of White, payable at the Watervliet Bank, was held by the Farmers and Mechanics' Bank of Albany.

At maturity it was sent to the Watervliet Bank, and the amount credited to the Farmers and Mechanics' Bank, and charged to the maker, although he had no funds in the bank. Suit was brought against the *maker, on the note.* The court say : " The Watervliet Bank was a stranger to the making and negotiation of the note, and to the parties, and having paid it to the holders, *took it as a purchaser,* and acquired their rights, and is entitled to the same remedies which the holders had, to sue and collect the amount due upon it." Again : " The Watervliet Bank took the note as purchaser from the Farmers and Mechanics' Bank, and having become such, after or at the time it became payable, the utmost that can be claimed as against them, is that they took the note subject to such defense as could have been made against it by the parties to it, in the hands of the Farmers and Mechanics' Bank." It appeared in that case, that the note was charged to the maker's account by the Watervliet Bank, and marked " paid," and that it was the practice of the bank, when notes were charged to the account of the maker, to stamp them, whether they were paid or not. In *Troy City Bank* v. *Grant,* (*Hill & Denio,* 119,) the facts were precisely the same as in the case now before the court. Grant was the indorser of a note held by the Troy City Bank, and payable at the Bank of Troy. At maturity, the note was presented at the Bank of Troy for payment. By mistake the bank " noted it as good," credited it to the Troy City Bank, and charged it to the maker. The next morning the mistake was discovered, and notice of non-payment of the note given by the Bank of Troy to the indorsers. The Troy City Bank, the holder, refused to cancel the credit, but *allowed* the action to be brought in its name, for the benefit of the Bank of Troy. The defendant moved for a nonsuit, on the ground that the note had been paid by the Bank of Troy, which was refused. The plaintiff had a verdict. A new trial was denied. The court say : " There can be no question about the correctness of the ruling in this case." And, again : " The

truth is, that the payment under the circumstances disclosed and relied on, in judgment of law, was no payment at all; and we must regard the case, and test it by principles, wholly irrespective of this consideration; and then the recovery stands upon unquestionable authority." If it was not a payment, then clearly the transaction between the plaintiff and the Seventh Ward Bank was a *purchase*, within the authority of *Watervliet Bank* v. *White*, (*supra.*) In the case of *Crosby* v. *Grant*, (36 *N. H. Rep.* 273,) the note was taken from the bank by the plaintiff, within bank hours, *on the last day of grace*, he paying the full consideration for it. The plaintiff had no previous connection with the note. This was held to be a purchase before maturity, and not subject to the equities between maker and payee. In no aspect of the case can this be considered a payment of the note, as between any of the parties. The whole transaction shows that it was the intention of the Irving Bank *not* to pay it; for when they discovered the mistake of their teller, they immediately advanced the money, and took the note, presented it for payment, and gave notice to the indorsers. It is very different from the case of a voluntary payment of a debt of a third party, made without request or legal obligation.

*Sherwood & Story*, for the respondent. I. The answer avers, the proof shows, and the court found the fact that the note was *paid* to the Seventh Ward Bank, while the Seventh Ward Bank was the lawful owner of it. By that *payment* the defendants became discharged.

II. The Irving Bank certified the note, by which it supposed it was liable to pay it to the Seventh Ward Bank. The Seventh Ward Bank regarded the Irving Bank as liable to pay it, and refused to release it from that liability, in the only way in which either supposed it could be done, whereupon the Irving Bank *paid* the note.

III. Whether or not the plaintiff was under legal obligations to pay the note to the Seventh Ward Bank, having

paid it without request of the defendants, the plaintiff cannot recover of them. (*Ingraham* v. *Gilbert*, 20 *Barb.* 151.)

BY THE COURT. If the judge was right in finding that the plaintiff was exonerated from liability to the Seventh Ward Bank, by the notice of the mistake, then the note was valid in the hands of the Seventh Ward Bank, and consequently of any other party to whom it was transferred.

The subsequent demand and notice of protest was good, and enured to the benefit of the plaintiff.

If the Irving Bank had refused payment, and the Seventh Ward Bank had sued and recovered on it, such recovery would not have been a payment to relieve the parties, but would merely operate to transfer the title to the plaintiff on payment of the judgment.

Judgment reversed, and new trial ordered; costs to abide the event.

[NEW YORK GENERAL TERM, May 6, 1861. *Clerke, Gould* and *Ingraham*, Justices.]